## DECISION OF CHIEF JUSTICE LEE.—IN ADMIRALTY.

---

### CHARLES LE BON *et al. vs.* SHIP YOUNG AMERICA.

Before issuing process to attach the ship on a libel for seamen's wages, the court summoned the master to appear and show cause against it.

The complainants filed their libel for wages alleged to be due them for services on board of the "Young America," on her recent passage from San Francisco to Honolulu; but before issuing process against the ship, the court, desirous of avoiding vexatious or unnecessary litigation, summoned the master of the "Young America" to appear before the Chief Justice and show cause why the prayer of the complainants for such process should not be granted.

Before proceeding to the decision of the case, allow me to say that I feel the responsibility resting upon me in this class of cases to be a very weighty one; for while I am bound to protect the mariner, who is a special favorite with courts of Admiralty, in all his just rights, a due regard for the welfare of commerce, and, I may add, for the sailor himself, who is "proverbial for his rashness and proneness to error, when on shore," requires me to take every measure in my power to prevent unnecessary litigation.

Before issuing the process prayed for, I must be satisfied that the wages claimed are probably really owing, and are unjustifiably withheld. Now what are the facts of the case. It is agreed by both parties that the complainants were shipped "by the run," for a voyage from San Francisco to Honolulu, for which they were to receive the sum of Fifty Dollars each. The voyage has been performed, and the only difference between the parties is, that while one side alleges the wages to have been paid, the others say they have never received a farthing. Captain Babcock testifies that he paid the shipping

master in San Francisco their wages in full, it being the custom of that port that wages "by the run" should always be paid in advance; and that the complainants were called into the cabin of the ship, previously to her sailing, and then and there acknowledged to having received their pay from the shipping master.   This evidence is corroborated by that of Christopher Gill, the first mate, and Joseph Harley, the steward,—the latter being present during the whole interview. On the contrary, the complainants testify that they were stolen from a French ship, just arrived in San Francisco, and were taken on board the " Young America," in the night, by the shipping agent, who promised them fifty dollars each for the run, and told them they should be paid when the sails were furled in Honolulu.   They further testify that they cannot write their names, and never saw or signed any shipping articles, and have never received any wages.   They are Frenchmen, understanding very little English, and when they were called to the cabin, as testified by the captain, they state that they supposed it was simply to answer to their names, which they did, and then passed immediately forward to their work.

After a careful examination of the evidence, I am satisfied that the master of the "Young America" *did* pay the shipping master in San Francisco the wages of the complainants, as stated by him, and hence I cannot issue the process prayed for.   But, say the complainants, the shipping articles don't show that we have been paid, and how, with them before you, can you come to such a conclusion ?   The shipping articles, I answer, are entirely unworthy of serious consideration in this case, when compared with the evidence of the master and others; for they are nothing but a loose, informal piece of paper, bearing no date, and according to the evidence of both parties, false in more respects than one.   The articles show that the complainants are shipped *by the month*, while according to the evidence of both master and mariners, they were shipped *"by the run."*   In my opinion, the shipping master, who evidently drew up this loose, hasty paper, intended to place the " $50," set opposite the names of the respective complainants, in the column of "advance wages;" but by mistake placed it in the next column of "wages per month," and hence arises the error.

But, notwithstanding I believe the captain has paid the *shipping master* all the wages of the complainants, still, I do not believe that the seamen ever received a cent of that money.   At first I thought they were in debt to a boarding master, who was present in the cabin when they were called below, and that his bill had swallowed up their wages, but it seems the complainants were stolen by the shipping master from a French ship, just arrived, and transferred to the "Young America," without ever having been ashore in San Francisco, and in that case, there could have been no bills against them. What I do believe is this,—that the shipping master, though he received the wages from Capt. Babcock, never paid them to the men; and when they were called into the cabin and nodded their heads, as Harley says, to the question put to them by the shipping master, they supposed that they merely answered to their names; for evidently they understood next to nothing of the English language.   I believe that the complainants in their anxiety to escape from the French ship, in order to better themselves, as they say, in the "Young America,"

o

surrendered themselves into the hands of an unscrupulous agent, who, taking advantage of their ignorance, has cheated them out of their money, and perhaps left them without a remedy, unless as against him.

But, after all, I may be mistaken; and although I cannot conscientiously grant a process against the vessel, the complainants may still sue the captain for their wages; and taking into consideration the reasons there are to believe that the complainants have not been paid by the shipping master, as well as to avoid the expense, inconvenience and vexation of further litigation, I would advise the master to present the complainants ten or fifteen dollars each. It seems to me equity requires that they should not be turned away penniless.

Mr. Blair, Proctor for complainants.

Mr. Bates, Proctor for defendant.

The master gave the complainants $10 each, agreeably with the advice of the court.